**UNITED STATES of America Plaintiff,**

**v.**

**37.37 ACRES OF LAND, MORE OR LESS, IN the COUNTIES OF KERN AND TULARE, CALIFORNIA; Cora A. Tree, et al., Defendants.**

**No. 1255.**

United States District Court
S. D. California, N. D.
March 11, 1960.

---

Laughlin E. Waters, U. S. Atty., Ray H. Kinnison, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff.

George C. Hadley, Asst. Chief Atty., Los Angeles, Cal., for defendant State of California.

MATHES, District Judge.

In this condemnation proceeding the question has arisen as to who, among several owners in the chain of title, is to receive compensation for the taking. The answer to this question turns upon which of several dates involved was the "date of taking", and hence the date as of which "just compensation" is to be paid to the then owner of the estate or interest taken.

Briefly stated, the facts are these. On March 18, 1953, the Government commenced this action to condemn an easement for a pipeline through certain land in Kern and Tulare Counties, California, including "Parcel 3" here in controversy. On April 20, 1953, an order granting plaintiff the right to immediate possession of Parcel 3 was entered in accordance with the provisions of 40 U.S. C.A. § 258a. The order provided in part:

"Plaintiff, United States * * * is granted the right to immediate possession of the lands described * * *.

"All persons in possession of said lands are hereby ordered and directed to deliver possession thereof, for such purposes, to the plaintiff * * *.

"The defendants' rights to just compensation for the taking of said lands, and the interests therein, are not waived hereby, but are expressly reserved to the defendants, including the right to interest at the rate of 6% per annum from the date possession is granted * * *."

When this order for immediate possession was entered, Parcel 3 was owned in fee by defendant Joemarah Cowart Reed. On October 14, 1953, Reed conveyed the fee to the State of California. On April 26, 1954, the Government took actual physical possession of Parcel 3 by commencing excavation for the pipeline.

Some three years later, on September 24, 1957, the State of California conveyed Parcel 3 to Douglas Armstrong. On May 9, 1958, the Government filed a Declaration of Taking as to Parcel 3, and deposited with the Clerk of this Court $50, the estimated just compen-

sation for the easement taken. This sum has now been found to be the just compensation due the owner of Parcel 3 for the taking.

Section 258a of Title 40 of the U.S. C.A. provides that "the right to just compensation * * * shall vest in the persons entitled thereto; and said compensation shall be ascertained and awarded in said proceeding and established by judgment therein, and the said judgment shall include, as part of the just compensation awarded, interest at the rate of 6 per centum per annum on the amount finally awarded as the value of the property as of the date of taking, from said date to the date of payment * * *."

It is clear from United States v. Dow, 1958, 357 U.S. 17, 21–27, 78 S.Ct. 1039, 2 L.Ed.2d 1109, that the owner of Parcel 3 at the time of the filing of the Declaration of Taking is not entitled to the award under the circumstances at bar. For there the owner of the fee at the time of filing of the Declaration of Taking asserted that the right to the award of just compensation had in fact been assigned to him, and that his assignor was the fee owner, both at the time when the order granting immediate possession was entered and at the time when the Government entered into actual possession of the land. And the Court, after noting that this assignment of the right to the award failed to comply with 31 U.S.C.A. § 203 [357 U.S. at page 20, 78 S.Ct. at page 1043], declared that "the 'taking' did not occur * * * when the Government filed its declaration of taking, but rather when the United States entered into possession of the land * * *. It follows that the landowners [at the time the Government entered into possession] were entitled to receive the compensation award * * *." 357 U.S. at page 21, 78 S.Ct. at page 1044.

The Court then went on to explain:

"The usual rule is that if the United States has entered into possession of the property prior to the acquisition of title, it is the former event which constitutes the act of taking. It is that event which gives rise to the claim for compensation and fixes the date as of which the land is to be valued and the Government's obligation to pay interest accrues." 357 U.S. at page 22, 78 S.Ct. at page 1044.

Since in the Dow case the owner at the time of the order granting immediate possession and the owner at the time the Government entered into actual possession of the property were one and the same, and both dates occurred within the period of a few days, the Court did not there confront the precise question at bar. That question, namely, what was the "date of taking" of Parcel 3 within the meaning of 40 U.S.C.A. § 258a, is answered by a determination whether the Government "entered into possession" at the time of the order of April 20, 1953, granting the right to immediate possession, or on April 26, 1954, when the Government took actual possession and began excavating for the pipeline.

No case precisely in point has come to my attention. To be sure, there is language in Dow which indicates that reference was there made to actual rather than constructive possession, when the Court observed that "certainty is not lacking under the rule advocated by the Government, which fixes the 'taking' at the time of the entry into physical possession—a fact readily ascertainable whether or not the Government makes use of condemnation proceedings, and whether or not it ever files a declaration of taking." 357 U.S. at page 25, 78 S.Ct. at page 1046.

But as the statement just quoted from the opinion suggests, the Court was there contrasting the act of taking actual possession with the act of filing a declaration of taking. And the Court had already pointed out that, if it were held that the filing of a declaration of taking fixes the "date of taking", the Government could delay the running of interest, and could choose the most advantageous date for valuation as well, by merely postponing the filing of a declara-

tion; and at the same time could deprive the owner of undisturbed possession, either by entering into actual possession without order of Court, or by procuring the right to immediate possession through order of Court. 357 U.S. at pages 24–25, 78 S.Ct. at page 1045.

By parity of reasoning, since the "date of taking" fixes the time for valuation and the accrual of interest, if that date were to depend upon the taking of actual possession—an event totally within the control of the condemnor—then the Government could procure a Court order for immediate possession and, by postponing the taking of actual possession under the order, could speculate as to valuation and delay the running of interest, while depriving the owner of the right to undisturbed possession because of the outstanding order of Court giving ipso facto constructive possession of the land. Any procedure permitting such speculation at the expense of the landowner has long been considered violative of constitutional principles. See: United States v. Dickinson, 1947, 331 U.S. 745, 747–749, 67 S.Ct. 1382, 91 L.Ed. 1789; Seaboard Air Line R. Co. v. United States, 1923, 261 U.S. 299, 305–306, 43 S.Ct. 354, 67 L.Ed. 664; United States v. Rogers, 1921, 255 U.S. 163, 168–169, 41 S.Ct. 281, 65 L.Ed. 566; 23 Tracts of Land, etc. v. United States, 6 Cir., 1949, 177 F.2d 967, 969–970.

In the case at bar, inasmuch as the Court's order expressly provides that interest is to be computed from the date of the order, and directs that possession be delivered to the Government as of that date, the order may properly be held to fix the time of accrual of the rights of the parties, not alone to possession of the land condemned, but also to just compensation for the estate or interest taken. See: United States v. Bauman, D.C.Or.1943, 56 F.Supp. 109, 111–112; United States v. Certain Lands in City of Des Moines, D.C.S.D.Iowa 1942, 46 F.Supp. 800, 802; cf. 23 Tracts of Land, etc. v. United States, supra, 177 F.2d at page 970. And when this order for immediate possession is read in the light of the provisions of 40 U.S.C.A. § 258a, it seems clear that the date of the order was in fact the "date of taking."

In United States v. Dickinson, supra, the Court declared that:

"Property is taken in the constitutional sense when inroads are made upon an owner's use of it to an extent that, as between private parties, a servitude has been acquired either by agreement or in course of time." 331 U.S. at page 748, 67 S.Ct. at page 1385.

When this Court granted to the Government the right to immediate possession of Parcel 3, the then owner was at that time deprived of all legal right to possession. Moreover, the right to possess and occupy the land is basically the right for which the Government is paying. As a matter of fairness, then, and of common-sense judicial administration too, just compensation should be paid to the owner of the fee as of the time the right to immediate possession is granted. Fixing the effective date of the order granting immediate possession as the "date of taking", in cases where the immediate-possession provisions of 40 U.S.C.A. § 258a are invoked, establishes the "date of taking" with relative ease, since the crucial event is a matter of record. Additionally, such a rule narrows the opportunity for speculation as to valuation on the part of the acquiring agency of Government. See United States v. Certain Lands in City of Des Moines, supra, 46 F.Supp. at page 802.

From what has been said, it follows that where, as at bar, an order for immediate possession antedates entry into actual possession and the filing of any declaration of taking, the effective date of the order for possession is the date of taking. As to Parcel 3, the fee owner on that date, namely April 20, 1953, was defendant Joemarah Cowart Reed, who is entitled to be paid the just compensation awarded therefor.