Argued and submitted May 14, reversed and remanded with instructions in CA A97048 and CA A98205 November 25, 1998, petition for review denied March 23, 1999 (328 Or 365)

Judi ROCKWELL,
*Respondent,*

*v.*

Michael NELSON
and Nancy Pacey,
*Appellants.*

(96-07-11172A; CA A97048 (Control))

Michael NELSON
and Nancy Pacey,
*Appellants,*

*v.*

Judi ROCKWELL,
*Respondent.*

(96-06-11156E; CA A98205)
(Cases Consolidated)

970 P2d 666

David B. Hydes argued the cause for appellants. With him on the briefs was David B. Hydes, P.C.

Gerald A. Martin argued the cause and filed the brief for respondent.

Before De Muniz, Presiding Judge, and Haselton and Linder, Judges.

DE MUNIZ, P. J.

## DE MUNIZ, P. J.

In this consolidated proceeding, appellants Nelson and Pacey appeal from a judgment denying their claim for specific performance of an option agreement and affirming a justice court judgment in favor of respondent on her Forcible Entry and Detainer (FED) action. We reverse.

Both the facts and procedural history are convoluted. Respondent is the owner of a residence in Hines. In May 1995, respondent and appellants signed a lease/option agreement under which appellants would pay rent in the amount of $485 a month. Appellants were to repair the garage roof and reroof the house at their expense.[1] The repairs were to be completed by September 30, 1995, and the purchase option was to be exercised on or before May 5, 1996. If appellants exercised the option, 70 percent of the rent was to be credited towards the $60,000 purchase price. Respondent testified that, by 1996, the property had increased significantly in value.

In February 1996, Wheeler, respondent's real estate agent, contacted Nelson and told him that they needed to go forward with the purchase of the house. The agent prepared an earnest money agreement that Nelson signed on February 12. Respondent signed on February 17.[2] Nelson contacted a mortgage broker recommended by Wheeler to find a loan.

However, the roof repairs had not been completed. In fact, they had not been started, and, on March 5, respondent sent appellants an eviction notice based on the option agreement claiming default because of the lack of repairs. In April, she brought an FED proceeding in which appellants prevailed. After the proceeding, appellants made the repairs at a cost of $5,000, completing them on May 4.

By letter dated May 1, appellants' attorney notified respondent that appellants were exercising the option.

---

[1] Respondent testified that the repairs were consideration for taking the house off the market for a year.

[2] There was evidence that the agreement was altered after Nelson signed it but before respondent did. However, those changes have no bearing on the issues we need address in this appeal.

Appellants' attorney prepared a sale. agreement that extended the time for closing to June 5. Respondent signed the agreement on May 14; Nelson did not sign until June 19.[3] Pursuant to the agreement, appellants' attorney opened an escrow, and respondent ordered a preliminary title report.

Nelson reapplied through the same mortgage broker for a loan[4] and, on June 5, respondent received notice from the broker that Nelson had been given a "credit approval" letter. The letter contained a list of items that Nelson was required to provide "prior to ordering your loan documents." Wheeler testified that the credit approval letter would not assure that appellants would receive a loan. At the hearing on respondent's second FED on June 27, see below, respondent was informed that Nelson had obtained a loan. On July 19, appellants' attorney sent a letter to respondent's attorney informing him that the loan had been approved and that the full purchase price could be funded on 48 hours' notice. At trial, however, there was no documentary evidence that the loan was approved, and the mortgage broker did not testify.

When closing had not occurred by June 5, respondent filed a second FED complaint on June 10. Following the hearing, the justice court found that the only controlling agreement was the original lease/option, which was a contract of sale under ORS 90.110(2) and not subject to the Residential Landlord and Tenant Act. The justice court granted judgment to respondent, and appellants appealed to the circuit court. Meanwhile, on June 27, appellants filed their action seeking specific performance of the lease/option agreement. That action was consolidated with the FED appeal. Both were tried to the court in February 1997. The trial court denied appellants specific performance, holding that they had failed to establish that they were capable of tendering performance for purchase of the property. The court remanded the FED judgment to the justice court for execution of the judgment.

---

[3] Pacey was not intended to be a party to that agreement and did not sign.

[4] There was some evidence that the processing of the first loan application was stopped by the first FED proceeding.

■ Appellants first challenge the jurisdiction of the justice court to decide the FED action. They contend that the justice court could not consider the matter because title to real property was an issue in the proceeding. We agree. The right to possession of the property involved whether appellants had exercised their rights under the option agreement and what interest that would give them. ORS 51.090(1) specifically excludes from the jurisdiction of the justice court any "action in which the title to real property shall come in question." The trial court erred in remanding the FED proceeding to the justice court for execution of the judgment in favor of respondent. We do not reach appellants' second assignment of error regarding the FED judgment.

Appellants next assign error to a number of rulings and findings that the trial court made in denying their claim for specific performance. We address those assignments together. *See* ORAP 5.45(6). We must determine whether appellants exercised the option agreement, and, if so, whether they now have a cognizable interest in the property that either entitles them to specific performance or that must be foreclosed. We review *de novo*. ORS 19.415(3).

■ Appellants contend that they exercised their option under the agreement. The option agreement provided that the option would be null and void

> "unless exercised by [appellants] on or before the 5th day of May, 1996 at 5:00 pm by notifying [respondent] of [appellants'] intent to exercise said option by a writing forwarded to [respondent] at [respondent's] address stated below; immediately thereafter, the parties hereto, following the formula stated above, shall determine the amount of said purchase price and shall execute and deliver an agreement of sale and purchase in the form attached hereto. Contemporaneously with the delivery of said agreement of sale and purchase, [appellants] shall make the first or down payment stated in said agreement."

The trial court held that appellants exercised the option either through the February earnest money agreement or the May 1 letter. It is respondent's position that the option was

never exercised because, although appellants provided written notice, they did not "immediately" make payment. Immediate payment is not what the agreement requires for exercise of the option. The agreement clearly states that the option is exercised by giving written notice. Both the sale agreement and payment were to follow that notice. On our review, we agree with the trial court that, even if appellants did not exercise the option in the February earnest money agreement, they did so by written notice on May 1.

■■ When appellants exercised the option, a bilateral contract was created. *Adamson v. Thrall*, 262 Or 408, 411, 498 P2d 379 (1972). The question of payment, thus, goes to whether appellants could require respondent's specific performance of that contract. A party seeking the remedy of specific performance must establish that he or she is ready, able and willing to perform the obligations under the contract. *Percy v. Miller et al.*, 197 Or 230, 239-40, 251 P2d 463 (1953). The trial court found that appellants were unable to tender the purchase price, and again, on our *de novo* review, we concur. As noted above, there was evidence that information was received by respondent that appellants had been approved for a loan. There was, however, no evidence that that information was valid. Appellants did not meet their burden to show that they were able to perform. *See Thompson v. Parke*, 40 Or App 359, 364, 595 P2d 499 (1979) (buyers who had loan commitment from credit union were ready, willing and able to pay cash price); *see also Voin v. Szabo*, 139 Or App 590, 594, 913 P2d 717 (1996), *rev dismissed* 325 Or 247 (1997) (to establish that a party is ready, willing and able to perform, more is required than speculation).

■■ Although we find no error in the trial court's denial of appellants' claim for specific performance, we agree with them that the appropriate remedy is foreclosure.[5] Appellants' exercise of the option transferred to them an interest in the land.[6] *See Herndon v. Armstrong*, 148 Or 602, 608, 36 P2d

---

[5] Appellants sought a judgment of specific performance or "any other relief the court deems just" and argued that, in the event specific performance was not granted, the appropriate remedy was foreclosure.

[6] Wheeler testified that the option agreement was recorded, and the copy of the agreement in the record appears to have a recording number.

184, 38 P2d 44 (1934) (optionee has no interest in land unless he or she accepts the option thereby changing from optionee to vendee). That interest must be foreclosed. *See Adamson*, 262 Or at 413 (inasmuch as defendants who exercised option agreement have a purchasers' interest, the proper decree is one for foreclosure of their interest); *see also De Motts v. Small*, 276 Or 859, 559 P2d 950 (1976) (decree of strict foreclosure foreclosed option to purchase).

CA A97048 (Trial Court No. 96-07-11172A) reversed and remanded with instructions to remand to justice court for dismissal for lack of subject matter jurisdiction; CA A98205 (Trial Court No. 96-06-11156E) reversed and remanded with instructions to enter judgment of foreclosure.